IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Crosetti Brand (M-02369), | |
| Plaintiff, | |
| v. | Case No. 17-cv-02552 |
| William Murawski, et al., | Judge Martha M. Pacold |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit brought under 42 U.S.C § 1983, Plaintiff Crosetti Brand, an inmate at Shawnee Correctional Center, challenges the constitutionality of his November 24, 2015 arrest and pretrial detention in connection with charges of home invasion, aggravated domestic battery, and possession of a stolen motor vehicle. Before the court is Defendants' motion for summary judgment. [185]. For the below reasons, that motion is granted.

**Background**

**I.    Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Subsection (a) of that rule requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. N.D. Ill. L. R. 56.1(a).

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); N.D. Ill. L. R. 56.1(b). In the case of any disagreement, the opposing party must reference "affidavits, parts of the record, and other supporting materials." *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment must submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." N.D. Ill. L. R. 56.1(b)(3)(C). Pursuant to Local Rule 56.1(b)(3)(C), "[a]bsent prior leave of Court," such a statement shall not exceed "more than 40 separately-numbered statements

of additional facts." *Id.* "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* A plaintiff's *pro se* status does not excuse plaintiff from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

In this case, Defendants filed a Local Rule 56.1 statement of material facts with their motion for summary judgment. [187]. Consistent with the local rules, Defendants also provided Brand with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. [188].

Brand, for his part, filed a memorandum of law opposing summary judgment, which includes a recitation of facts. *See* [203]. Brand also submitted a "Statement of Disputed Material Facts," [202], which consists of fifty-eight numbered paragraphs that list and summarize the contents of various documents and responses to written depositions produced in discovery. Each numbered paragraph is supported by a reference to exhibits provided by Brand. *See* [202]; *see also* [204] (Brand's exhibits).

Even generously construed, Brand's submission is not a proper response to Defendants' statement of material facts. Rather, Brand's statement amounts to a statement of *additional* facts, many of which are immaterial to the issues raised in Defendants' motion for summary judgment. Although courts construe *pro se* pleadings "liberally," *Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse plaintiff from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules.").

Because Brand has failed to respond to Defendants' Rule 56.1 Statement of Undisputed Material Facts, the court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Within the boundaries of Brand's admissions, however, the court will—consistent with Brand's *pro se* status—construe his submission in the light most favorable to him, giving Brand the benefit of the doubt whenever he has pointed to favorable evidence in the record or could properly testify himself about the matters asserted. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013) ("Because the plaintiff is proceeding pro se, the court will grant him considerable leeway and consider the factual assertions he makes in his summary judgment materials. . . . However, the plaintiff's factual

2

statements will be entertained only to the extent that they are supported by the record and/or he could properly testify about the matters asserted."); Fed. R. Evid. 602 (a lay witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Even if accepted, Brand's improper submissions would have little impact on this court's analysis, as the parties' recitation of facts relevant to this action are generally consistent. The court accordingly recites the properly supported facts in Defendants' Local Rule 56.1(a)(3) statement and decides whether, on those facts, Defendants are entitled to summary judgment.

## II. Relevant Factual Background

### A. Police Investigation

On November 3, 2015, Anita Shannon called police to report domestic violence at her residence. [187] ¶ 6. Chicago Police Officer Donald Smith responded to the call and spoke with Shannon at her apartment. [187] ¶ 7. Shannon told him that earlier that evening her ex-boyfriend, Plaintiff Crosetti Brand, came to her building, pushed his way into her apartment, and pulled out what appeared to be a handgun. [187] ¶ 8. Shannon said Brand then hit her in the head, took her car keys, ran out of the apartment, and drove away in her vehicle. [187] ¶ 9. Officer Smith returned to the police station and prepared an "Original Case Incident Report," which memorialized what Shannon had told him. [187] ¶ 10; *see also* [204] at 6–8 (providing a copy of the police report).

Around November 7, 2015, Defendant Murawski, who was working as a Chicago Police Department detective, was assigned to investigate the November 3, 2015 events. [187] ¶ 11. Upon being assigned to the case, Defendant Murawski reviewed the incident report prepared by Officer Smith. [187] ¶ 12.

On November 10, Murawski and Defendant Detective Torres met with Shannon and her fifteen-year-old son, Maurice Bates, at their residence. [187] ¶ 13. Murawski first interviewed Bates, who reported that Brand was Shannon's ex-boyfriend and that the two had broken up about one week before the November 3 incident. [187] ¶ 14. Bates described the incident as follows: On November 3, Bates was in his bedroom when he heard Brand push into the apartment while Shannon attempted to prevent Brand from entering. [187] ¶ 15. Bates left his bedroom and saw his mother and Brand arguing. [187] ¶ 15. Bates attempted to separate Brand from his mother, but Brand took a handgun from his vest and pointed it at Bates, asking, "Is this what you want?" [187] ¶ 16. Brand then turned the gun on Shannon, pointing it at her neck, and threw her to the floor.

[187] ¶ 17.  Brand took Shannon's car keys without her permission, fled the apartment, and drove away in her vehicle.   [187] ¶ 18.

After the pair finished interviewing Bates, Detectives Murawski and Torres took Shannon to the Area Central Detective Division, where Murawski interviewed Shannon.   [187] ¶ 19.  Shannon related the following events to Murawski: Shannon told Murawski that she had previously dated Brand but had ended the relationship on October 30.   [187] ¶ 20.  On November 3, Brand showed up at the daycare where Shannon worked and asked to speak with her.   [187] ¶ 21. Shannon told Brand to leave her alone, but he remained outside the daycare for some time before eventually leaving.   [187] ¶ 22.  Later that night, Brand knocked on Shannon's apartment door.   [187] ¶ 23.  Shannon again told him she did not want to speak with him and that she would call the police if he did not leave.   [187] ¶ 23.  Instead of leaving, Brand pushed into the apartment, grabbed Shannon's shirt, and dragged her towards the apartment bathroom.   [187] ¶ 24.  Shannon said her son tried to intervene, but Brand pulled a gun from his vest, pointed it at Bates and told Bates to get back.   [187] ¶ 25.  Brand then grabbed Shannon's neck and squeezed hard, making it difficult for Shannon to breathe.   [187] ¶ 26.  Brand shoved Shannon's face into a dresser until she fell to the floor.   [187] ¶ 27.  Brand went into Shannon's bedroom, removed her car keys, left the apartment, and drove away in Shannon's vehicle.   [187] ¶ 28.

Shannon also told Murawski that Brand had continued to call her after the November 3, 2015 incident and that, on November 4, 2015, she had obtained an order of protection against Brand.   [187] ¶ 29.  Shannon stated she received a text message from Brand on November 8, which indicated where her van was located and the following day, she used a spare set of keys to retrieve her van from that location.   [187] ¶ 30.  Shannon said she accidentally deleted that text message from her phone.   [187] ¶ 31.  Shannon, however, had received other threatening text messages that she had not deleted, which she showed Murawski, explaining to him that the messages were from Brand.   [187] ¶ 32.

Shannon told Murawski she wanted to pursue charges against Brand and, also on November 10, she signed complaints against him for home invasion, burglary, and aggravated assault.   [187] ¶ 33; *see also* [187-17] at 2–4.  Murawski considered Shannon and Bates credible and reliable witnesses and, based on that assessment and the version of events they related, Murawski concluded there was probable cause to believe Brand committed the crimes sworn to by Shannon.   [187] ¶ 35.  On November 10, Murawski issued an investigative alert for Brand's arrest for aggravated domestic battery, home invasion, and burglary.   [187] ¶ 35; *see also* [204] at 75–77.  Murawski determined that probable cause existed independently, without involvement from Detectives Salazar and Torres.   [187] ¶ 36.

4

On November 24, Brand was arrested based on the investigative alert. *See* [10] at 8. After Murawski received notification of the arrest, he and Salazar brought Shannon and Bates to the Area Central Detective Division. [187] ¶ 43. Murawski also contacted the Felony Review Unit of the Cook County State's Attorney's Office. [187] ¶ 44. Murawski and Salazar met with Brand in a holding room at Area Central Detective Division. [187] ¶ 45. After being advised of his *Miranda* rights, Brand invoked his right to have an attorney present and the interview ended. [187] ¶ 45.

Murawski and Assistant State's Attorney (ASA) Andy Nastoff then interviewed Shannon and Bates, who related substantially the same version of events they had previously told to Murawski on November 10. [187] ¶¶ 46, 48. Both Shannon and Bates agreed to have their interviews videotaped. [187] ¶ 49. During the interview, Shannon viewed the contents of a property bag with items that were in Brand's possession when he was arrested. [187] ¶ 47. Shannon identified the car keys she stated Brand took on November 3. [187] ¶ 47.

As to Torres and Salazar's involvement in the events above, on November 10, Torres accompanied Murawski to Shannon's home, observed Murawski's interviews with Shannon and Bates, and viewed Shannon's vehicle outside her residence. [187] ¶ 42. After Brand's arrest, Salazar accompanied Murawski to pick up Shannon and Bates at their residence and brought them to the Area Central Detective Division. [187] ¶¶ 37–38. Salazar then brought Brand from lock up to a holding room and observed Murawski interview Brand. [187] ¶ 39. Salazar observed ASA Nastoff interview Shannon and Bates on November 24. [187] ¶ 40. Salazar also retrieved Brand's property bag after his arrest on November 24 and was present when Shannon identified her car keys. [187] ¶ 41.

### B. Brand's Criminal Trial

Brand was charged by information with aggravated domestic battery based on strangling the victim, possession of a stolen motor vehicle, and two counts of home invasion. [187] ¶ 50. His bench trial took place on January 31, 2017. [187] ¶ 51. At the trial, Shannon and Bates testified to substantially the same events they related to Murawski on November 10 and 24, 2015. [187] ¶¶ 52, 53; *see also* [187-13] at 29–120. In closing arguments, defense counsel's primary argument was that Shannon and Bates's stories had not been consistent over time or with each other's accounts. [187] ¶ 54–55. Defense counsel argued Shannon's testimony "was not credible" and that there was "no corroboration of [her] story." [187] ¶ 56. The prosecutor, on the other hand, argued that any inconsistencies in Shannon and

5

Bates's stories were minor and even indicated they were telling the truth. *See* [187-13] at 147–49, 153.

At the conclusion of the trial, the judge noted that the ultimate question in the case was "one of credibility." [187] ¶ 57. The judge concluded Shannon and Bates's testimony was credible and found Brand guilty of possession of a stolen motor vehicle, home invasion, and aggravated domestic battery. [187] ¶¶ 59, 60. Specifically, the judge concluded that "the case does not involve any issue of identification. The people all knew each other. . . . The question is one of credibility. The defense says all the different errors [in testimony] suggested reasonable doubt. I don't believe it did, in my mind, at least. The errors of testimony [are] normal with two people testifying to the same event. The inconsistent statements were minor, in my opinion. They established what I said they established," i.e., a finding of guilty on charges of home invasion, aggravated domestic battery, and possession of a stolen motor vehicle. [187-13] at 161.

Brand later filed a post-trial motion seeking a new trial, in support of which defense counsel again argued to the judge that Shannon and Bates's testimony was unreliable and that, as a result, the State had failed to establish Brand's guilt beyond a reasonable doubt. [187] ¶¶ 61, 62; [187-14] at 4–5. The judge denied the motion, again noting that he found Shannon to be a "credible witness." [187] ¶ 63; [187-14] at 20–21.

Brand's convictions were affirmed on appeal on March 13, 2020. *People v. Brand*, 2020 IL App (1st) 171728 (Mar. 13, 2020).

### C.   Brand's Version of November 3, 2015 Events

With one exception,[1] Brand does not dispute the above facts. While he does not contest that Shannon and Bates made the statements described above to police and during his criminal trial, Brand says their stories were not credible and should not have been believed. [203] at 2. In a January 7, 2020 affidavit submitted in support of his response to the present motion for summary judgment, Brand states that he unequivocally denies all allegations of the alleged incident that had

---

[1] Brand states that Shannon called 911 on November 3, 2015, and reported that "somebody" had broken into her home, pulled a gun on her, and took her car, but that she was unable to identify that person. [202] at 2. This is not supported by the evidence in the record. Although Shannon did not identify the perpetrator by name during the 911 phone call, *see* [201], she was not unable to identify the individual and informed Officer Smith later that evening that it was Brand who had committed the acts. [204] at 6–8. Because this statement is not supported by the record, Brand cannot rely on it to create any issues of material fact and the court does not consider it here.

6

occurred on the night of November 3, 2015 at Anita Shannon's apartment. [204] at 151. Brand testified at his August 9, 2018 deposition in this case that he last saw Shannon in 2014, never sent her threatening messages, has never been to her workplace or home, and had never seen Bates prior to the criminal trial. [187] ¶¶ 66–69. Brand also stated during his deposition that he did not have Shannon's car keys with him when he was arrested on November 24, 2015, and that they "happened to appear at the [police station]." [187] ¶ 70. Brand states he "was never present nor does he have any knowledge of the incident that had occurred" on the night in question at Anita Shannon's apartment on November 3, 2015. [204] at 151. Further, Brand asserts that he never committed any crime on November 3, 2015. [204] at 151.

### D.     Brand's Civil Lawsuit

On April 3, 2017, Brand initiated this *pro se* civil rights lawsuit. *See* [1]. After submitting an amended complaint, he was permitted to proceed on his claims that Defendants Murawski, Torres, and Salazar issued an investigative alert without probable cause, resulting in his unlawful arrest[2] and detention.[3] [12]. Specifically, Brand alleged in the amended complaint that Defendants did not have enough information to support probable cause because the complaining witnesses were unreliable and "there was no evidence to corroborate the victim's testimony." [10] at 9. On September 19, 2019, Defendants filed the present motion for summary judgment. [185].

---

[2] Brand's Amended Complaint arguably also states an unlawful search-and-seizure claim by alleging that "Chicago police officers had absolutely no probable cause to stop and frisk me." [10] at 8. This claim falters at the outset because "[p]robable cause is not required for a stop and frisk, merely a reasonable suspicion." *United States v. Broadway*, 968 F.2d 1219 (7th Cir. 1992). Brand also appears to have forfeited this claim; he does not provide any facts or arguments in support of it in his Amended Complaint, his statement of facts, or his summary judgment brief. But even if these obstacles could be overcome, that would not alter the analysis. The record suggests that the facts supporting probable cause for Brand's arrest and detention were identical to the facts supporting probable cause for Brand's search (which took place at the same time Brand was arrested, *see* [187-16] at 10–12). Accordingly, while the court focuses its analysis on Brand's arrest and detention claims, the discussion is equally applicable to Brand's claim that he was searched without probable cause.

[3] Brand does not elaborate in his amended complaint or summary judgment submissions on the particular period of his detention that he challenges as unlawful. Construing Brand's submissions favorably, the court will treat this allegation as relating to the time from after Brand's arrest to the time he was charged. None of the Defendants contributed to Brand's detention after he was charged; at that point, the decision whether to charge Brand belonged to the State's Attorney, not to Defendants.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a motion for summary judgment, the court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

Defendants move for summary judgment on several grounds: (1) Brand's claims that his arrest and pretrial detention were unsupported by probable cause are inconsistent with his convictions and thus are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) there was probable cause to arrest and detain Brand; (3) even if Brand had established a constitutional violation, Defendants are entitled to qualified immunity; (4) summary judgment in favor of Defendants Torres and Salazar is warranted because neither was personally involved in the determination that probable cause existed to arrest and detain Brand; and (5) Brand's claims are barred by the doctrine of collateral estoppel. For the following reasons, Defendants' motion for summary judgment is granted, and this case is dismissed in its entirety.

### A.   Brand's Claims Are *Heck*-Barred

In *Heck v. Humphrey*, the Supreme Court held that a Section 1983 action for damages is unavailable if success would necessarily imply that the plaintiff's criminal conviction or sentence is invalid, unless the underlying conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid on habeas review. 512 U.S. 477, 486–87 (1994); *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) ("[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a Section 1983

plaintiff must first "prove that his conviction had been invalidated in some way.") (citing *Heck*, 512 U.S. at 486); *Savory v. Cannon*, 947 F.3d 409, 415–19 (7th Cir. 2020) (en banc).

Defendants argue that *Heck* bars Brand's Section 1983 false arrest and detention claims because the factual predicate for those claims is directly at odds with the findings central to Brand's criminal convictions. Defendants contend Brand's position—that Shannon's and Bates's statements to Defendants were not credible enough to support probable cause for his arrest and subsequent detention—directly conflicts with the trial court's finding that Shannon's and Bates's statements were credible enough to establish Brand's guilt beyond a reasonable doubt. The court agrees with Defendants.

As Brand rightly points out, *Heck* does not automatically preclude a claim of false arrest or wrongful pretrial detention. "The fact that there is ultimately sufficient evidence to convict a criminal defendant does not always mean that there was probable cause to arrest him in the first place." *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 843 (N.D. Ill. Jan. 4, 2000). However, "if a plaintiff's allegations *necessarily* imply the invalidity of a conviction . . . the *Heck* bar springs back into existence." *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). "[W]here the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by *Heck*." *Szach v. Vill. of Lindenhurst*, No. 14-cv-07441, 2015 WL 3964237, at *6 (N.D. Ill. June 25, 2015) (citing cases). Thus, a Section 1983 plaintiff can "plead himself into a *Heck* bar" by insisting on facts inconsistent with the validity of his conviction. *Easterling v. Moeller*, 334 Fed. App'x 22, 24 (7th Cir. 2009); *accord Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

Brand attempts to eliminate this possibility by disclaiming any challenge to his conviction and by arguing that, were he to prevail on his claims, "his conviction will be unchanged and unaffected." [203] at 4, 17. However, the Seventh Circuit has held that "[i]t is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid *Heck* kicks in and bars his civil suit." *Okoro*, 324 F.3d at 490. To determine whether Brand's claim is barred by *Heck*, then, the court must analyze the relationship between his civil claim and the criminal charges on which he was convicted. *See McCann v. Neilsen*, 466 F.3d 619, 621–22 (7th Cir. 2006). The court's analysis is not limited to "the formalistic language in the original [criminal] complaint" but is more expansive, including the factual basis for the conviction. *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016).

9

Here, Brand's claims that he was arrested and detained without probable cause rely on factual allegations that contradict the findings supporting his conviction. Murawski determined probable cause existed to issue an investigative alert for Brand's arrest based on the information Shannon and Bates provided on November 10, 2015, and based on the criminal complaints signed by Shannon. [187] ¶ 35. Similarly, at Brand's criminal trial, the prosecution's case relied almost entirely on testimony from Shannon and Bates, both of whom testified to essentially the same version of events that they related to Murawski on November 10, 2015. [187-13] at 29–120. Brand's trial counsel argued that this testimony was not credible and, therefore, that reasonable doubt existed as to Brand's guilt. [187-13] at 137–38. The trial court, however, rejected this argument. [187-13] at 160–61. Explicitly noting that the outcome of the case depended on a determination that Shannon's and Bates's testimony was credible, the court concluded that any inconsistencies in the testimony did not undermine Shannon's or Bates's credibility. [187-13] at 160–61. Based on that testimony, the court found Brand guilty of possession of a stolen motor vehicle, home invasion, and aggravated domestic battery. [187-13] at 161.

Both Murawski's probable cause determination and Brand's conviction depended on the credibility of Shannon's and Bates's statements. Moreover, Brand cannot identify (and the court cannot discern) any reason why Shannon's and Bates's pretrial testimony to police officers would have been less credible than their similar testimony during trial. To find for Brand under these circumstances would thus require a rejection of the state court's conclusion that Shannon's and Bates's testimony was credible and supported a finding of guilt beyond a reasonable doubt. *See Mordi*, 870 F.3d at 708 (a plaintiff's Fourth Amendment claim is *Heck*-barred where the claim "really raise[s] a fundamental argument about the evidence used to convict him"); *Stoner v. Vill. of Downers Grove*, No. 13-cv-01406, 2014 WL 3734165, at *3 (N.D. Ill. July 29, 2014) (*Heck* barred false arrest claim where, "[t]o declare [the plaintiff] falsely arrested, a jury would be required to pick between the criminal trial judge's guilty determination and [the plaintiff's] claim that there was no probable cause to believe he failed to reduce speed to avoid an accident and was operating a motor vehicle without insurance").

Looking to the substance of Brand's claims, his argument that no credible testimony supported the probable cause determination is, in fact, an assertion that he did not commit—and should not have been found guilty of committing—the crimes for which he was convicted. For example, Brand states in his supporting affidavit that he unequivocally denies all allegations of the alleged incident that had occurred on the night of November 3, 2015 at Anita Shannon's apartment. [204] at 151. In response to a question at his deposition as to why he was pursuing the present lawsuit, Brand also said he believed Murawski should have been aware

10

Shannon was lying regarding his involvement in the incident; he testified further that he had not seen Shannon since 2014, had never been inside her apartment, had never possessed Shannon's car keys, and that the first time he saw Bates was during the January 31, 2017 trial. *See* [187-16] at 7–9, 16 (deposition pp. 23:13–14, 26:1–18, 29:8–11, 59:24, 60:1–8). These claims are plainly incompatible with Brand's criminal convictions, meaning that "*Heck* kicks in and bars his civil suit." *Okoro*, 324 F.3d at 490 ("Okoro adhered steadfastly to his position that . . . he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit.").

### B. There Was Probable Cause for Brand's Arrest

In the alternative, Defendants argue they are entitled to summary judgment because Brand's arrest and pretrial detention were supported by probable cause. Because there is no genuine dispute of material fact regarding whether probable cause existed for Brand's arrest and detention, Defendants are entitled to summary judgment on this ground as well.

Restraint of an individual's liberty, whether by an arrest or pretrial incarceration, must be supported by probable cause. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 917–19 (2017). Probable cause "is an absolute defense" to a claim that an individual has been falsely arrested or wrongfully detained. *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013) (false arrest); *Chachere v. City of Chicago*, No. 16-cv-02401, 2018 WL 1087643 at *5–7 (N.D. Ill. Feb. 28, 2018) (false arrest and wrongful pretrial detention). Probable cause exists if "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). "As long as a reasonably credible witness or victim informs the police that someone has committed a crime . . . the officers have probable cause." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).

As an initial matter, Brand asserts for the first time in his response brief that his arrest was unconstitutional because it was based on an investigative alert. [203] at 4. Brand points to *People v. Bass*, 2019 IL App (1st) 160640, 144 N.E.3d 542, in which the Illinois appellate court concluded that Chicago's investigative alerts violated the Illinois Constitution. But Brand's lawsuit alleges only that his *federal* constitutional rights were violated. Even if Brand's arrest violated state law or the Illinois Constitution, Brand cannot proceed under Section 1983 based solely on a state-law violation. *See, e.g.*, *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations

11

of state statutes and regulations); *Archie v. City of Racine,* 847 F.2d 1211, 1216–17 (7th Cir. 1988) (a violation of state law does not give rise to an actionable § 1983 claim unless it independently violates the Constitution or federal law). And the Seventh Circuit has concluded, although in a nonprecedential disposition, that an arrest based on an investigative alert supported by probable cause did not violate the Fourth Amendment. *Banks v. Fuentes*, 545 F. App'x 518, 520–21 (7th Cir. 2013) ("Like a warrant, the investigative alert authorized Banks's arrest because other officers already had made a determination of probable cause.").[4] The court in *Bass* reached the same conclusion. *See Bass*, 144 N.E.3d at 552–53 (where "the facts in the investigative alert amounted to probable cause," a warrantless arrest "did not violate the fourth amendment to the United States Constitution"). Standing alone, the fact that Brand was arrested based on an investigative alert does not render Brand's arrest or detention unconstitutional.

The court thus turns to probable cause. The uncontested evidence shows the following: On November 3, 2015, Shannon told Officer Smith that Brand showed up at her apartment earlier that evening, entered the apartment without permission, pulled out a gun, hit her in the head, took her car keys, and drove away in her vehicle. [187] ¶¶ 8–9. Smith recorded this information in an investigation report, which Murawski reviewed. [187] ¶¶ 10, 12. On November 10, Murawski also interviewed Shannon and Bates, who told him that on November 3, Brand pushed his way into Shannon's residence without her permission, beat and choked her, brandished a gun, took her car keys and drove away in her car. [187] ¶¶ 14–29. Shannon also showed Murawski messages containing threats, which Shannon said came from Brand, and told Murawski that she received a message from Brand telling her where she could find her van, and that she was able to recover her van from that location. [187] ¶¶ 30, 32. Shannon signed complaints against Brand for home invasion, burglary, and aggravated assault. [187] ¶ 33.

Based on this information, Murawski issued an investigative alert on November 10 for Brand's arrest for aggravated domestic battery, home invasion,

---

[4] Even in Illinois, *Bass* is not settled law. The Illinois Supreme Court has granted prosecutors' petition for leave to appeal in this case, *see People v. Bass*, 144 N.E.3d 1200 (Ill. 2020), and other panels of the state Appellate Court have disagreed with the ruling in *Bass*. *See People v. Braswell*, 149 N.E.3d 225, 234, 2019 IL App (1st) 172810, ¶¶ 36–39 (rejecting reasoning of *Bass* and finding that police officers' use of an investigative alert did not violate the Illinois Constitution); *see also People v. Thornton*, 2020 IL App (1st) 170753, ¶ 49 (Ill. App. Ct. Mar. 31, 2020) (observing that "barring investigative alerts seems contrary to the central requirement of the fourth amendment and Illinois's search and seizure provision, which is reasonableness"); *People v. Bahena*, 2020 IL App (1st) 180197, ¶¶ 58–64 (similarly rejecting argument that investigative alert supported by probable cause was insufficient for arrest under the Illinois Constitution).

and burglary.  [187] ¶ 35; [204] at 75–77.  Brand does not identify any basis to conclude that Defendants acted unreasonably in relying on Shannon's and Bates's account to determine probable cause existed for his arrest.  "A police officer is permitted to rely on information provided by an eyewitness as long as the officer reasonably believes the witness is telling the truth."  *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015).  "The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false. . . . '[A]s long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing a crime, the officers have probable cause.'"  *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012) (quoting *Spiegel*, 196 F.3d at 723).

Although Brand contends that Murawski should have doubted the veracity of Shannon's story due to the inconsistencies between Shannon's and her son's statements, the differences between the statements given by Shannon and Bates were minor and did not negate the essential elements of the crimes for which Murawski issued the investigative alert.  On each occasion that Shannon and Bates described the November 3 events, both related that Brand entered the apartment without permission, brandished a gun, physically assaulted Shannon, and took Shannon's car keys and van.  Murawski considered Shannon and Bates credible and, contrary to Brand's contention that Murawski should have conducted further investigation, "[s]o long as an officer reasonably believes the putative victim or eyewitness to a crime is telling the truth, he may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts."  *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013); *see also Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 716 (7th Cir. 2013) (an officer need not conduct an "independent investigation . . . [where] a reasonably credible witness informs an officer that a suspect has committed a crime") (citations omitted); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) ("[t]he existence of probable cause does not depend on the actual truth of the complaint" and "officers [a]re entitled to take [a complaining witness] at his word as to [a suspect]'s actions").

No reasonable jury could decide on this record that Defendants lacked a reasonable basis for their probable cause determination based on the information available to them when the investigative alert issued.  For this reason, summary judgment is appropriate.

Because Brand's claims are barred by *Heck*, and because Brand's arrest and pretrial detention were supported by probable cause, the court need not reach Defendants' additional arguments that they are entitled to qualified immunity, that Defendants Salazar and Torres lacked sufficient personal involvement in the

probable cause determination to be held liable, or that Defendants are entitled to summary judgment on the basis of collateral estoppel. *See, e.g.*, *Jones v. Devore*, No. 14-cv-03394, 2015 WL 5785540, at *1 (C.D. Ill. Oct. 2, 2015) ("The Court agrees as to the *Heck* bar, which obviates the need to decide the thornier issue of collateral estoppel.").

## Conclusion

For the reasons above, the court grants Defendants' motion for summary judgment [185] and dismisses Brand's claims with prejudice. The Clerk is directed to enter final judgment.

If Brand wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be nonmeritorious, Brand could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Brand seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1).

Brand need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if he would like the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled on. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: March 31, 2021 /s/ Martha M. Pacold